# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

**KEVIN EDWARDS,**
**A# 075-002-549,**

    **Petitioner,**

vs.                                                  **Case No. 4:20cv350-WS-MAF**

**WILLIAM P. BARR, et al.,**

    **Respondents.**

_____/

## REPORT AND RECOMMENDATION

    The pro se Petitioner initiated this case on July 10, 2020, by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, ECF No. 1, seeking "immediate release" from detention. Because Petitioner simultaneously paid the filing fee at the time of case initiation, the petition was reviewed and deemed sufficient to alert Respondents to the basis of Petitioner's claims. Service was directed, ECF No. 5, and Respondents required to show good cause why the petition should not be granted.

    On September 8, 2020, Respondents filed a response to the petition, ECF No. 8, arguing that the petition should be denied. Essentially,

Respondents contend that Petitioner's continued detention is warranted because Petitioner will be "obtaining a travel document, and removal is significantly likely to occur in the reasonably foreseeable future." *Id.* at 5, 6, and 8.

Petitioner was reminded of his opportunity to file a reply to the response, ECF No. 8, filed by Respondents. ECF No. 9. Petitioner timely filed a reply, ECF No. 10, and the pleadings have been fully reviewed.

**The Petition, ECF No. 1**

Petitioner Kevin Edwards alleged that he is a native and citizen of Saint-Martin,[1] Guadalupe, who entered the United States through Puerto Rico on October 10, 1996. ECF No. 1 at 4. Petitioner became a lawful permanent resident on May 16, 2000. *Id.* Petitioner was taken into the custody of ICE on April 8, 2019, *id.* at 2, and was ordered removed on July 19, 2019. *Id.* Petitioner said that although he was born in Saint-Martin, Guadalupe, he was ordered removed to the wrong country - St. Maarten, Netherlands Antilles. *Id.* at 2, 4. His appeal was dismissed by the Board of Immigration Appeals (BIA) on January 7, 2020. *Id.* at 4.

---

[1] Saint Martin is a Caribbean island divided between France and the Netherlands. ECF No. 8 at 1. There is a French portion of the island (Saint Martin), and a Dutch portion (Sint Maarten). *Id.*

Petitioner advises that he "has cooperated fully with all efforts by ICE to remove" him and "voluntarily provided identity documents." *Id.* at 4.  He contends that Respondents "refuse to release him even though they are unable to deport him and will be unable to deport him in the reasonably foreseeable future." *Id.* at 2.  He also contends that "Saint-Martin, Guadeloupe has refused to issue travel documents to him." *Id.*  He claims that "government is unwilling or unable to issue [a] travel document." *Id.* at 6.  Thus, Petitioner seeks release from detention pursuant to <u>Zadvydas v Davis</u>, claiming that "there is no significant likelihood" of his removal in the reasonably foreseeable future.  *Id.*

**The Response, ECF No. 8**

Respondents provided the declaration of Cleybis Jayroe, a Deportation Officer employed by "Immigration and Customs Enforcement (ICE), Office of Enforcement and Removal Operations (ERO)," who reviewed "the case of Kevin Edwards Urighre (Petitioner),[2] A075 002 549." ECF No. 8-1 at 2.  Mr. Jayroe states that after Petitioner was convicted of a criminal offense in 2017, he entered ICE custody on April 8, 2019, and was

---

[2] Although Respondents provide a different surname for Petitioner, there appears to be no dispute as to Petitioner's identity.  Petitioner also used the surname Urighre in his reply, ECF No. 10.

housed at the Wakulla County Detention Facility. *Id.* at 2. On July 19, 2019, an Immigration Judge ordered Petitioner "removed from the United States to the Netherland Antilles." *Id.* at 3. Petitioner's motion to reconsider was denied by the Immigration Judge on August 6, 2019. *Id.* Petitioner then filed an appeal with the BIA, but it was dismissed on January 7, 2020. *Id.*

On January 22, 2020, ICE requested issuance of a travel document from the French Embassy in Miami, Florida. ECF No. 8-1 at 3. The Embassy advised on February 24, 2020, that they were "trying to obtain proof of his French citizenship." *Id.* at 4. Because Petitioner's passport was too old to be in their database, the Embassy requested Petitioner's birth certificate from the Saint Martin authorities. *Id.* Additionally, the Embassy advised that the passport photo "was too old to provide Petitioner" was "the owner of the passport." *Id.*

Petitioner provided a copy of his birth certificate from French Caribbean Saint Martin on February 28, 2020, and ICE immediately forwarded it to the French Embassy. *Id.* Progression pictures were also provided on March 4, 2020, to show Petitioner was "the owner of the

passport." *Id.* In addition, Petitioner's mother's phone number was given to the Embassy on March 5, 2020, per the Embassy's request. *Id.*

Officer Jayroe's declaration advises that ICE made multiple requests to the French Embassy in March and April 2020, attempting to obtain a status update. ECF No. 8-1 at 5. No response was received until May 8, 2020, when the French Embassy advised that it had been closed due to the COVID-19 pandemic. *Id.* at 5. The Embassy advised that it was "waiting on City Hall in Guadalupe to send Petitioner's acquisition of French nationality formulated by his father who became a French citizen." *Id.* at 5-6. Petitioner was unable to assist in that process as he did not have contact with his father and did not know his whereabouts. *Id.* at 6. However, Petitioner's mother told the Embassy that she would attempt to get in touch with Petitioner's father to obtain the requested document. *Id.*

ICE again requested a status update from the Embassy in early June 2020; that request also went without a response. *Id.* at 6. In early July 2020, ICE sought assistance from the Assistant Attaché for the Caribbean in obtaining a travel document for Petitioner. *Id.* Additionally, "ICE sent a request for issuance of a travel document to the Netherland Embassy in


Miami, Florida," as Petitioner's "mother is a Netherland citizen and Petitioner was ordered deported to Netherland Antilles." *Id.* at 7.

ICE requested another status update from the French Embassy on July 29, 2020. ECF No. 8-1 at 7. In early August, the Embassy advised that they were still waiting on a response from City Hall which had been closed due to COVID-19. *Id.* Meanwhile, ICE was informed on August 12, 2020, by the Netherland Consulate that a travel document would not be issued for Petitioner because he "has French nationality, not Dutch." *Id.*

Officer Jayroe advised that a travel document request was still pending from the Government of France. *Id.* at 7. He said that when the Government of France confirms "Petitioner's acquisition of French nationality from the Guadalupe City Hall in St. Martin a travel document most likely [will] be issued." *Id.* at 7-8.

**The Reply, ECF No. 10**

Petitioner points out that he has been held in detention for more than seventeen months, well in excess of the presumptive six month removal period. ECF No. 10 at 2. He contends that no "bona fide reason" has been put forth to explain his continued detention. *Id.* He notes that he has provided his passport and birth certificate, but ICE is still unable to obtain a

travel document. *Id.* Petitioner reiterates that the Netherlands will not issue a travel document, and ICE has been unsuccessful in obtaining a travel document from Guadeloupe. *Id.* at 3.

Petitioner argues that ICE has not provided any "cogent evidence that could show this Honorable Court when this removal will likely take place . . . ." *Id.* at 4. He contends that due to the passage of time and the fact that Guadeloupe has not issued a travel document, ICE cannot show that his removal is significantly likely to occur in the reasonably foreseeable future. *Id.* at 5.

Finally, Petitioner states[3] that he has not provided inaccurate information, refused to assist in the removal process, or otherwise "prevent his removal." *Id.* at 14. To the contrary, he points out that he has fully cooperated with removal efforts and says he would not be a flight risk if released from detention or pose any danger to the public. *Id.* Petitioner states that because "there is no evidence when, if ever, travel documents will be issued, ICE has not satisfied its burden and Petitioner must be released." *Id.* at 5.

---

[3] Petitioner's reply is signed under penalty of perjury, asserting all facts are true and accurate. ECF No. 10 at 15.

Case No. 4:20cv350-WS-MAF

**Analysis**

Petitioner is not challenging the final order of removal in this petition. Rather, Petitioner seeks release from detention pursuant to <u>Zadvydas v. Davis</u>, 533 U.S. 678, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001). This Court has jurisdiction over such a petition. 28 U.S.C. § 2241.

The Immigration and Naturalization Act ("INA") directs the removal of an alien from the United States after entry of a final order of removal. 8 U.S.C. § 1231(a)(1)(A). In general, the statute provide for a "90 day" removal period during which the alien must be detained. 8 U.S.C. § 1231(a)(2). Another provision authorizes further detention beyond the 90 day removal period if the "alien ordered removed" is "inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal . . . ." 8 U.S.C. § 1231(a)(6).

Nevertheless, the United States Supreme Court held in <u>Zadvydas v. Davis</u> that the INA does not permit the "indefinite detention" of a removable alien. <u>Zadvydas</u>, 533 U.S. at 689, 121 S. Ct. at 2498. The Court held that continued detention of aliens beyond the mandated 90-day removal period

Case No. 4:20cv350-WS-MAF

was permissible under the statute, but only for the "period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689, 121 S. Ct. at 2498.  The Court concluded that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.*, at 699, 121 S. Ct. at 2503.  For the sake of uniform administration by the federal courts, the Court held that "the presumptive period during which the detention of an alien is reasonably necessary to effectuate his removal is six months; after that, the alien is eligible for conditional release if he can demonstrate that there is 'no significant likelihood of removal in the reasonably foreseeable future.'" Clark v. Martinez, 543 U.S. 371, 125 S. Ct. 716, 722, 160 L. Ed. 2d 734 (2005) (quoting Zadvydas, 533 U.S. at 701, 121 S. Ct. at 2505).

In Clark v. Martinez, the Court extended its interpretation of 8 U.S.C. § 1231(a)(6) to inadmissible aliens.  The Court found no reason why the period of time reasonably necessary to effect removal would be longer for an inadmissible alien than for a resident alien.  Clark, 543 U.S. at 386, 125 S. Ct. at 727; *see also* Benitez v. Wallis, 402 F.3d 1133, 1135 (11th Cir. 2005).  Thus, the six month presumptively reasonable period of time is the same for both admitted and inadmissible aliens.  Benitez, 402 F.3d at

1135.  If an alien shows he has been held longer than the presumptively reasonable removal period and his removal is not reasonably foreseeable, a § 2241 petition should be granted.  Clark, 543 U.S. at 386-387, 125 S. Ct. at 727; Benitez, 402 F.3d at 1135 (relying on Clark to hold that an inadmissible alien must be released and paroled into the country if he has been detained beyond the six month removal period and his removal is not reasonably foreseeable).

Zadvydas established a burden-shifting analysis for reviewing § 2241 habeas petitions.  After the presumptive six month removal period has expired, an alien must provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Zadvydas, 533 U.S. at 701, 121 S. Ct. at 2505.  Thereafter, "the Government must respond with evidence sufficient to rebut that showing." *Id.*  Thus, an alien is not entitled to release based on the fact that the post-removal period has expired.  "To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." 533 U.S. at 701, 121 S. Ct. at 2505.  "And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the

'reasonably foreseeable future' conversely would have to shrink." *Id.* at 701, 121 S. Ct. ay 2505. "[I]f removal is not reasonably foreseeable," the writ should be granted because continued detention is "unreasonable" and "no longer authorized by statute," and the alien should be released under supervision, subject to custody again "upon a violation of those conditions." 533 U.S. at 699-700, 121 S. Ct. at 2504.[4]

The initial § 2241 petition sufficiently alleged that Petitioner's continued detention was unconstitutional and indefinite. ECF No. 1. Petitioner claimed that Respondents were unable to remove him, that a travel document request had been denied from the Netherlands, and his removal was not significantly likely to occur in the reasonably foreseeable future. *Id.* at 1, 4. Thus, Petitioner met his burden under Zadyvas and the burden shifted to Respondents to rebut his allegations.

Respondents have presented evidence which confirms that ICE has been seeking the issuance of a travel document for Petitioner since

---

[4] The relevant statute provides: "An alien ordered removed who is inadmissible under section 1182 of this title, removable [for violations of nonimmigrant status or entry conditions, violations of criminal laws, or threatening national security] or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." 8 U.S.C. § 1231(a)(6) (quoted in Benitez v. Wallis, 402 F.3d 1133, 1134 (11th Cir. 2005)).

January 22, 2020. Their efforts have been unsuccessful and, for the most part, requests for updates went unanswered. The Netherlands Consulate denied a request for a travel document because, according to their records, Petitioner has French nationality and is not Dutch. That leaves open the possibility of removal through the Government of France, but the French Embassy has been unable to confirm Petitioner's identity. The evidence shows that the French Embassy has been waiting on information from City Hall in Guadalupe, but there is no indication that City Hall is currently open. The French Embassy confirmed that City Hall has been closed due to the pandemic and the Embassy has been unable to reach anyone by telephone. In short, there is evidence that a travel document request has been pending for nearly a year, but no evidence has been presented to show that a document is forthcoming.

Petitioner was ordered removed on July 19, 2019. His appeal to the BIA was dismissed on January 7, 2020. Respondents have had ten months to carry out Petitioner's removal but have been unsuccessful. On this record, it would only be speculation to assume that Petitioner could be removed in the foreseeable future. There is no evidence to show when City Hall might reopen, when the Embassy might could confirm Petitioner's

French identity, whether a travel document might be issued, or when travel could be arranged. It appears that the pandemic has prevented progress on Petitioner's removal and efforts are at a stand still. Petitioner has demonstrated that his removal is not likely to occur in the foreseeable future.

When an alien shows that he has been held beyond the presumptive removal period and his removal is not reasonably foreseeable, his § 2241 habeas corpus petition should be granted. Clark, 543 U.S. at 386-387, 125 S.Ct. at 727; Benitez, 402 F.3d at 1135. An alien who cannot be removed cannot "be condemned to an indefinite term of imprisonment within the United States." Zadvydas, 533 U.S. at 695, 121 S. Ct. at 2502.

The statute governing release provides that if an alien "is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3). The regulations require the alien to: "(A) to appear before an immigration officer periodically for identification; (B) to submit, if necessary, to a medical and psychiatric examination at the expense of the United States Government; (C) to give information under oath about the alien's nationality, circumstances, habits, associations, and

activities, and other information the Attorney General considers appropriate; and (D) to obey reasonable written restrictions on the alien's conduct or activities that the Attorney General prescribes for the alien." 8 U.S.C. § 1231(a)(3). Respondents should be ordered to release Petitioner from custody pursuant to § 1231(a)(3).

## RECOMMENDATION

Accordingly, it is **RECOMMENDED** that the petition for writ of habeas corpus filed by Kevin Edwards under 28 U.S.C. § 2241, ECF No. 1, be **GRANTED**, and the Court **ORDER** that Petitioner be immediately released upon conditions of supervision pursuant to 8 U.S.C. § 1231(a)(3).

**IN CHAMBERS** at Tallahassee, Florida, on October 14, 2020.

     S/    Martin A. Fitzpatrick
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

## **NOTICE TO THE PARTIES**

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u> If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.